FILED
2022 Mar-21  PM 03:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CORRINE SOUTHWORTH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:20-cv-00914-LSC** |
| | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

### I.    Introduction

The plaintiff, Corrine Southworth ("Southworth" or "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Jenkins timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Southworth was 37 years old at the time of her application and 35 years old on her alleged onset date. (*See* Tr. 27, 285.) She completed two years of college. (Tr. 290.) Her past work includes experience as an accounting clerk, accounting manager,

1

chiropractor assistant, and phlebotomist. (Tr. 291.) Plaintiff claims that she became disabled on June 15, 2017. (Tr. 285).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *Id*. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id*. The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that

"substantial evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id*.

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id*. §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent her from performing his past relevant work, the evaluator will make a finding of not disabled. *Id*.

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *Id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the

plaintiff can perform other work, the evaluator will find her not disabled. *Id*.; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") found that Plaintiff has not engaged in SGA since June 15, 2017, the alleged date of the onset of her disability. (Tr. 18.) According to the ALJ, Plaintiff's fibromyalgia, Crohn's disease, interstitial cystitis, depression, anxiety, and conversion disorder are "severe impairments." (*Id*.) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-19.) The ALJ determined that Plaintiff has the following RFC:

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except occasional pushing or pulling with upper and lower extremities: no climbing ladders or scaffolds: occasional climbing ramps and stairs: occasional balancing, stooping: no kneeling, crouching, crawling: frequent reaching, handling fingering, feeling: occasional exposure to extreme heat and cold: vibration: no exposure to dangerous machinery, unprotected heights: and should have reasonable access to restroom facilities during all customary and routine work breaks.
>
> During a regularly scheduled workday, or the equivalent thereof, individual can:
>
> 1. Understand and remember short and simple instructions, but is unable to so [sic] with detailed or complex instructions.

   2.  Do simple, routine, or repetitive tasks, but is unable to do so with detailed or complex tasks.

   3.  Have no more than occasional contact with the general public, and occasional contact with co-workers.

   4.  Deal with changes in work place, if introduced occasionally and gradually, and are well-explained.

(Tr. 20.)

According to the ALJ, Plaintiff is unable to perform any of her past relevant work. (Tr. 27.) The ALJ also determined that Plaintiff is a "younger individual age 18-44" at 35 years old, has at least a high school education, and is able to communicate in English, as those terms are defined by the regulations. (*Id.*) The ALJ determined that the "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used the Medical-Vocational Rules as a guideline for finding that there are jobs in the national economy with a significant number of positions that Plaintiff is capable of performing, such as an addresser and document preparer. (Tr. 28.) The ALJ concluded by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from June 15, 2017, through the date of this decision." (*Id.*)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates

against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520. 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## III.   Discussion

Plaintiff argues that the ALJ's decision was not supported by substantial evidence nor made in accordance with the proper legal standards. (Doc. 13 at 2.) Plaintiff contends that the ALJ's decision should be reversed for three reasons: (1) the ALJ erred at step two of the evaluation by implicitly finding that Plaintiff's inflammatory polyarthritis was not a severe impairment, (2) the ALJ did not give appropriate weight to the opinion of Plaintiff's treating rheumatologist, Dr. Greg Eudy, and (3) the ALJ's findings as to Plaintiff's RFC "were incomplete and not supported by substantial evidence." (Doc. 13 at 2-3.)

7

### A. Whether the ALJ Erred by Concluding that Plaintiff's Inflammatory Polyarthritis Was Not a Severe Impairment

To be found disabled, Plaintiff had to demonstrate that she was unable to engage in any SGA by reason of a medically determinable physical or mental impairment expected to result in death or that can be expected to last twelve or more continuous months. 20 C.F.R. § 404.1505. At step two, the ALJ had to determine whether the Plaintiff had a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. *Id.* An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.5121, 416.921; Social Security Ruling(s) ("SSR"s) 88-28, 96-3p, and 96-4p. The burden of showing that an impairment or combination of impairments is "severe" rests at all times with the claimant. *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

Here, the ALJ did not include Plaintiff's inflammatory polyarthritis among Plaintiff's severe impairments during the relevant period from Plaintiff's alleged

8

onset date of June 15, 2017, through the date of the decision. (Tr. 18.) Plaintiff suggests that the ALJ's standard for finding that her arthritis was a severe impairment was too high and that the RFC does not account for the corresponding limitations. (Doc. 13 at 3-7.) The Commissioner argues that even if the ALJ should have included Plaintiff's inflammatory polyarthritis as a severe impairment at step two of the analysis, this omission is harmless error because the ALJ found other severe impairments at step two and accounted for Plaintiff's symptoms and limitations throughout the rest of the analysis. (Doc. 15 at 5-8.) The Court agrees with the Commissioner.

In support of her argument, Plaintiff cites *Stratton v. Bowen*, 827 F.2d 1447 (11th Cir. 1987), as support for her position that an elevated standard for a severe impairment is error. Indeed, in that case, the Eleventh Circuit explained,

> An overly stringent interpretation of the threshold severity requirement violates the statutory standard for disability by precluding an administrative determination of the crucial statutory question: Whether, in fact, the impairment prevents the claimant from working, given the claimants [sic] age, education, and experience.

*Id.* at 1453. She also highlights the Eleventh Circuit holding in *McCruter v. Bowen*, 791 F.2d 1544 (11th Cir. 1988). The court in that case determined that the ALJ's "misuse of the 'severity' determination as a means of denying benefits to an

applicant who is in fact 'unable to engage in substantial gainful activity' where the record evidence in fact demonstrates the existence of a medically established impairment which does in reality result in inability to work" required reversal. *Id.* at 1548-49.

In response, the Commissioner does not appear to dispute that Plaintiff's arthritis might have qualified as a severe impairment. (Doc. 15 at 5-8.) Instead, the Commissioner notes that in the Eleventh Circuit, failure to include all severe impairments at step two of the analysis is not necessarily grounds for reversal. *See e.g., Freeman v. Comm'r, Soc. Sec. Admin.*, 593 F. App'x 911, 914 (11th Cir. 2014) ("[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two.") (quoting *Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir.1987)); *McCormick v. Soc. Sec. Admin., Com'r*, 619 F. App'x 855, 858 (11th Cir. 2015) ("step two is merely a filter, and any error in considering an additional impairment is harmless since it does not factor into the determination of disability") (citing *Jamison*, 814 F.2d at 588)); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) ("Nothing requires that the ALJ must identify, at step two, all of the

impairments that should be considered severe."). Instead, as set forth in *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013),

> [W]e need not consider whether substantial evidence supports the ALJ's conclusion at step two—that Gray's cervical spine impairment was not a severe impairment—because even if there was error, it would be harmless. In assessing Gray's RFC, the ALJ found that Gray had severe impairments and that the step two test was satisfied, and then specifically considered and discussed the symptoms that Gray alleged stemmed from a cervical spine impairment elsewhere in the five-step sequential process.

In Plaintiff's case, the ALJ found six severe impairments at step two of the analysis: fibromyalgia, Crohn's disease, interstitial cystitis, depression, anxiety, and conversion disorder. (Tr. 18.) With a finding of several severe impairments, Plaintiff passed through the step-two filter. The ALJ also considered Plaintiff's arthritis in the subsequent steps of the analysis and accounted for it in formulating Plaintiff's RFC. (Tr. 20-27.) The ALJ stated, "the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 20.) The ALJ considered *all symptoms*, not just symptoms of the severe impairments earlier set forth. (*Id.*)

Specifically, the ALJ referred to Plaintiff's testimony at the hearing where she claimed she was unable to work due to a variety of conditions, including polyarthritis.

(Tr. 21, 126.) The ALJ also noted, however, that Plaintiff's testimony indicated that the injections she received to help her pain lasted between three and four months. (Tr. 21, 125.) In examining the medical records, the ALJ noted that they showed "a history of treatment Crohn's disease, rheumatoid arthritis, interstitial cystitis, renal artery stenosis, fibromyalgia, and anxiety." (Tr. 22.) The ALJ also highlighted "[t]reatment notes from August 2017 show treatment for rheumatoid arthritis." (Tr. 23, 1202-08.) But the ALJ also remarked on the reported improvement with Gabapentin and notes indicating normal gait and station with no spinal deformities. (Tr. 23, 1202, 1204, 1207.) The ALJ references treatment notes from three subsequent appointments with Dr. Eudy in December 2017, March 2018, and May 2019. (Tr. 23-25, 1209-11, 1215-17, 1348-50.) In March 2018, the ALJ described how Dr. Eudy notes showed that Plaintiff "fe[lt] like the Rayos helps somewhat but she still has pain and inflammation," but she was "tolerating the lower dose of the Imuran without any changes in her symptoms." (Tr. 24, 1215.) At the appointment in May 2019, Plaintiff reported a "huge difference" with a change in her medication and noting that inflammatory polyarthropathy was among her diagnoses. (Tr. 25, 1349.)

The ALJ also considered the opinion of the state agency medical consultant, Samuel Chastain, M.D. (Tr. 25.) Dr. Chastain did not examine Southworth, but he

believed that she could occasionally lift 20 pounds and frequently lift or carry 10 pounds. (Tr. 25, 152.)  He also believed that Plaintiff could sit, stand or walk 6 hours out of an 8-hour workday, but he limited Plaintiff to frequent pushing or pulling in the lower extremities. (*Id.*)  His report also indicated that Plaintiff could occasionally climb ramps or stairs, ladders, ropes, scaffolds, kneel, crouch, and crawl, and frequently balance and stoop. (Tr. 25, 153.) The ALJ only found Dr. Chastain's somewhat persuasive, determining that the evidence supported a finding of greater limitations, which the ALJ factored into Plaintiff's RFC. (Tr. 25.)

As discussed in further detail below, the ALJ also considered the medical source statement provided by Dr. Greg Eudy, finding it unpersuasive based on the evidence in the record. (Tr. 26, 1197-99.)

The ALJ concluded that Plaintiff's "rheumatoid arthritis, peripheral neuropathy and fibromyalgia are controlled with pain medication and routine outpatient care." (Tr. 26, 1200-17.) Still, the ALJ accounted for Plaintiff's complaints of pain by imposing further restrictions beyond those normally associated with sedentary work, including no climbing of ladders or scaffolds, no kneeling, crouching, crawling, and no exposure to dangerous machinery or unprotected heights. (Tr.  20.) The ALJ also reduced Plaintiff to only occasional climbing of

ramps and stairs, occasional balancing or stooping, and occasional exposure to extreme heat and cold. (Tr. 20.)

Based on this record, the Court finds that the ALJ considered Plaintiff's inflammatory polyarthritis throughout the analysis and incorporated corresponding limitations into Plaintiff's RFC. Accordingly, any error by the ALJ in omitting Plaintiff's arthritis from the severe impairments in step two was harmless.

### B. Weight Given by the ALJ to the Opinion of Dr. Greg Eudy

To be found disabled, Plaintiff had to demonstrate that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment expected to result in death or to last twelve or more continuous months. *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505. At step two, the ALJ had to determine whether Plaintiff had a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. 20

C.F.R. §§ 404.1521, 416.921; Social Security Ruling(s) ("SSR"s) 85-28. The burden of showing that an impairment or combination of impairments is "severe" rested at all times with Southworth, as the Plaintiff. *Turner v. Comm'r of Soc. Sec.*, 182 Fed. App'x 946, 948 (11th Cir. 2006) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). Because Plaintiff bore the burden of proving she had a severe impairment, she thus had the burden of establishing the prerequisite for finding a severe impairment, i.e., the existence of a medically determinable impairment. *See Doughty*, 245 F.3d at 1280.

The record must include evidence from acceptable medical sources to establish the existence of a medically determinable impairment. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1513(a), 416.913(a) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability … ; there must be medical … findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities …."); *see also* 20 C.F.R. § 404.1502 (defining symptoms, signs, and laboratory findings).

Here, the ALJ concluded that Plaintiff had several severe impairments: "fibromyalgia; Crohn's disease; interstitial cystitis; depression; anxiety; and conversion disorder." (Tr. 19.) However, the ALJ found that none of these

impairments or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) Based on the determinations that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the qualifying impairments, the Plaintiff's RFC, and the finding that there were jobs in significant numbers in the national economy that the Plaintiff could perform, the ALJ determined that the Plaintiff has not been under a disability since her alleged onset date of June 15, 2017. (Tr. 18-28.)

Plaintiff asserts that the ALJ failed to give the proper weight to the opinion of Dr. Greg Eudy, as Plaintiff's treating rheumatologist, and further erred in failing to provide good cause for doing so. (Doc. 13 at 7-11.)

New regulations came into effect in 2017, which govern this case. These new regulations provide revised instructions to the ALJ for evaluating medical opinions. For claims filed after March 27, 2017, 20 C.F.R. §§ 404.1520c and 416.920c declare that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." Instead, the ALJ will consider supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship,

examining relationship specialization, and other factors in evaluating medical

opinions and prior administrative medical findings, with the most important factors

being supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c. While the

ALJ must explain the role of the supportability[1] and consistency[2] factors in

evaluating the opinion of a medical source or administrative medical finding, he is

not required to do the same for the other factors. *Id.* In responding to comments to

these changes when proposed, the Social Security Administration explained,

> The supportability and consistency factors provide a more balanced and
> objective framework for considering medical opinions than focusing
> upon the factors of consistency and the medical source's relationship
> with the individual. A medical opinion without supporting evidence, or
> one that is inconsistent with evidence from other sources, will not be
> persuasive regardless of who made the medical opinion.

*Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01

(Jan. 18, 2017).

---

[1] In addressing the supportability factor, the regulations instruct, "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).

[2] In regard to the consistency factor, the regulations similarly explain, "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

In contrast, 20 C.F.R. §§404.1527 and 416.927, the regulations that govern for claims filed before March 27, 2017, prioritize the treatment relationship, giving more weight to a treating source's medical opinion. Indeed, if the ALJ "find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of [Plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. §§404.1527, 416.927.

In one of the few Eleventh Circuit cases that mention this issue, the court stated, "For claims filed on or after March 27, 2017, … no significant weight is given to statements made by treating physicians as opposed to non-treating medical sources." *Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 497 n.1 (11th Cir. 2021). The court went on to explain that even under the regulations that apply to claims filed before March 27, 2017, the ALJ could still reject the treating physician's opinion in certain circumstances when it was not supported by the evidence. *Id.* at 497.

Plaintiff originally filed her claim on April 9, 2018, over a year after the new regulations took effect. (Tr. 16, 252). She provides no basis for asserting that the treating physician rule is still in effect, nor did she refute the Commissioner's

argument that the new regulations should apply in her reply brief. Accordingly, he Court finds no reason to apply the treating physician rule in this case.

Plaintiff references Dr. Eudy's medical source opinion, which he completed on January 10, 2019, as the basis of her argument that the ALJ did not give proper weight to Dr. Eudy's opinion. (Doc. 13 at 16; Tr. 1197-99.) This assessment consisted of seven yes-or-no questions with space to provide comments or explanations, but Dr. Eudy only marked his answers without providing any explanatory comments. (Tr. 1197-99.) On the form, Dr. Eudy indicated that he believed Plaintiff would experience symptoms or pain as a result of her underlying medical conditions and that a job that required her to sit or stand for long periods would increase her pain levels. (Tr. 1197.) Dr. Eudy also expected that maintaining a work posture for eight hours during the workday, without the chance to recline, as well as a job requiring frequent use of the hands for grasping or handling would increase Plaintiff's pain levels. (Tr. 1197-98.) He also indicated that he believed the increase in pain would be severe enough to cause "serious distraction" from tasks, or even result in a failure to complete tasks in a timely manner on more than an occasional basis. (Tr. 1198-99.) Dr. Eudy indicated that he believed Plaintiff's underlying medic al conditions could reasonably be expected to cause her subjective complaints and that he did not believe she was exaggerating her complaints. (Tr. 1199.)

19

The ALJ determined that Dr. Eudy's opinion was not persuasive. (Tr. 26.) As the basis for this conclusion, the ALJ remarked that the medical source statement that Dr. Eudy completed "only provided a vague assessment without any detailed medical findings to support his conclusions." (*Id.*) As one of the two most important factors, the lack of supportability alone undermines Plaintiff's argument that the ALJ erred by failing to give greater weight to Dr. Eudy's medical source opinion. *See* 20 C.F.R. §§ 404.1520c(a), (c)(1); 416.920c(a), (c)(1).

Next, the ALJ addressed the second factor required by the regulations, consistency. (*Id.*) The ALJ stated, "His statements are consistent with his own reported findings." The Commissioner contends that the ALJ committed a scrivener's error, leaving out the word "not," because of the explanation that followed: "While the claimant has reported the need for an ambulatory device, Dr. Eudy reported in May 2019 that the claimant demonstrated a normal gait…. Dr. Eudy did not identify any problems in the back. In addition, he acknowledge [sic] improvement with the claimant's medication regimen." (Doc. 15 at 17-18; Tr. 26.) The Court is inclined to agree with the Commissioner that the ALJ made a scrivener's error in addressing the consistency factor.

But even if the ALJ did not make a scrivener's error, the evidence cited by the ALJ does show normal gait, no spinal deformities, and improvement with

medication. (*See* Tr. 1202-04, 1206-07, 1209-10, 1213, 1215-16, 1348.) For example, on August 17, 2017, when Plaintiff first reported to Dr. Eudy, "[s]he presented with severe joint pain (all over)," as well as "a lot of joint swelling and stiffness." (Tr. 1202.) At that first appointment, however, Dr. Eudy noted that "Steroids help." (*Id.*) Dr. Eudy's notes also indicate that Plaintiff "sometimes is helped by trigger point injections in the upper back/neck muscles." (*Id.*) By the last appointment in the record on May 13, 2019, Dr. Eudy's notes state, "After last visit she went on Stelara, perhaps through the end of 2018; she could tell a 'huge difference' when on it (she came off of it due to insurance coverage). When she was on it, she had less GI symptoms. Her general flu like symptoms were better, too." (Tr. 1348.) In his assessment, the medication "subjectively helped GI symptoms and general symptoms." (Tr. 1349.) Dr. Eudy's notes also consistently indicate that Plaintiff exhibited "normal gait, back flexion, no spinal deformities." (Tr. 1204, 1207, 1210, 1213, 1216, 1348.)

Based on this evidence, the ALJ could reasonably conclude that Dr. Eudy's medical source opinion was unpersuasive because Plaintiff's alleged limitations are inconsistent with the medical record and unsupported by medical evidence. As a result, the ALJ did not err in the weight given to Dr. Eudy's opinion.

### C. Whether the ALJ's Findings as to Plaintiff's RFC Are Supported by Substantial Evidence

Plaintiff's RFC is an administrative finding as to the most the plaintiff can do despite the limitations from his impairments. *See* 20 C.F.R. §§ 404.1527(d), 404.1545(a), 416.927(d), 416.945(a). A plaintiff's RFC is reserved for the ALJ and is concluded based on the relevant medical evidence and other evidence included in the case record. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a plaintiff's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c). A plaintiff's statements about the frequency, intensity, and duration of her symptoms will only impact her RFC to the extent they are consistent with other evidence of record. *See* 20 C.F.R. §§ 404.1529, 416.929 (describing the Commissioner's process for evaluating subjective complaints).

In assessing Plaintiff's RFC, the ALJ examined diagnostic test results and clinical findings, opinion evidence, and the plaintiff's course of treatment when considering the effect of Plaintiff's impairments on his ability to work. (Tr. at 20-27.) The record demonstrates that the ALJ properly considered the objective evidence regarding Plaintiff's condition in making the RFC assessment.

Plaintiff's argument on this point centers on symptoms she experiences from Crohn's disease and interstitial cystitis. (Doc. 13 at 11-15.) She points to her

22

testimony that during flares associated with these conditions, she may need to use the restroom 5 or 6 times in an hour, and she argues that the ALJ's instruction in the RFC that she "should have reasonable access to restroom facilities during all customary and routine work breaks" does not adequately account for these limitations. (*Id.*; Tr. 20, 127.) The Court disagrees.

The ALJ remarked on Plaintiff's history of abdominal pain but noted that a CT scan in 2017 showed no acute process. (Tr. 1074.) The ALJ further noted improvement with medication and routine therapy. (*See e.g.*, TR. 421, 430, 864, 866.) The ALJ observed that a representative of Plaintiff's urologist, Dr. Scott Kelly, provided an opinion that Southworth "had no limiting effects on her physical and mental abilities to perform work related functions." (Tr. 26, 1190.) Without an opinion from Dr. Kelly himself, the ALJ "considered the overall evidence in the record regarding the claimant's urinary treatment." (Tr. 26.)

The record shows that Plaintiff has a history of gastrointestinal and urinary symptoms, including incontinence and diarrhea. (*See e.g.*, Tr. 366-69, 378-79, 381, 385-86, 393-94, 410, 440, 446-47, 630, 650, 665-66, 672, 696, 714, 777, 780, 802, 815, 885, 889, 894, 901, 908, 915, 918, 991, 1003, 1019, 1041, 1049, 1088, 1144, 1203, 1206, 1209, 1212, 1215, 1248, 1281.) However, often she showed mild or no tenderness in her abdomen and largely unremarkable abdominal imaging. (Tr. 365, 367-68, 370,

372-73, 378, 413, 420-21, 425-26, 433, 439, 464-66, 631, 637, 649, 652, 665, 668, 676-77, 693, 713, 721, 743, 751, 753, 784, 787, 830, 834, 838, 845, 850, 853, 857, 872, 879, 886, 897, 903, 905, 926, 932, 951-52, 963-64, 973, 989, 1004, 1008, 1020, 1038, 1055, 1094, 1098, 1102, 1106, 1112, 1127, 1129, 1141, 1146, 1151, 1159, 1161, 1218, 1224, 1235, 1242, 1249, 1260, 1268, 1295, 1309, 1314, 1317, 1323, 1326, .) Aside from occasional flare ups, as Plaintiff herself described in her hearing testimony, Plaintiff's symptoms are inconsistent, and medication has been shown to help. (Tr. 125, 692, 777, 889, 1314.) At times, Plaintiff reported no issues with diarrhea or urination. (Tr. 381, 442, 656, 802, 831, 846, 858, 864, 1007, 1011, 1019, 1041, 1049, 1063, 1068, 1088, 1160, 1170, 1178, 1195, 1215, 1220, 1293, 1306, 1319, 1323, 1327.) And some records, including the most recent, indicate that Plaintiff does not have Crohn's disease. (Tr. 656, 1141, 1195, 1212, 1348.)

Plaintiff's hearing testimony also indicated that she was experiencing symptoms of interstitial cystitis when she was last employed, and she "was able to kind of deal with," though she added that the development of other symptoms, such as those associated with Crohn's disease, have exacerbated her condition. (Tr. 125-26.) Plaintiff argues that customary bathroom backs are inadequate when Plaintiff is suffering a flareup. (Doc 16 at 5.) Yet Plaintiff admits that these flareups are

inconsistent and treatment and medication are helpful in managing her symptoms. (Tr. 125-27.)

The ALJ accounted for Plaintiff's limitations by prescribing that she "should have access to restroom facilities during all customary and routine work breaks." The record provides substantial evidence to support the ALJ's determination of Plaintiff's RFC.

## IV.   Conclusion

Upon review of the administrative record, and considering Plaintiff's argument, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON MARCH 21, 2022.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
206728